## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **COLLEEN A. DERRICK,** :<br>*Plaintiff* :<br>:<br>V. :<br>:<br>**CITY OF EAST PROVIDENCE, by and** :<br>**through its Finance Director,** :<br>**MALCOLM MOORE,** :<br>*Defendants* :<br>: | **C.A. NO.:**<br><br>**Jury Trial Demanded** |

## COMPLAINT

### I.     Introduction

This action is brought by the Plaintiff, Colleen A. Derrick, against her former employer, City of East Providence, seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, litigation expenses and other equitable relief, arising out of Defendant's violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-1, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et seq.*, the Rhode Island Civil Rights of People with Disabilities Act ("CRPD"), R.I. Gen. Laws § 42-87-1 *et seq.*, and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq.*

### II.    Parties

1.     Plaintiff Colleen A. Derrick ("Plaintiff") is a resident of the City of East Providence, County of Providence, and State of Rhode Island.

2.     Defendant City of East Providence ("Defendant East Providence" or "Defendant City") is a municipal corporation duly authorized and organized under the laws of the State of Rhode Island and is sued by and through its Finance Director, Malcolm Moore, who is currently

acting as Defendant City's Treasurer, the official designated by state law, R.I. Gen. Laws § 45-15-5, to be named in a suit for relief against Defendant City.

3. At all relevant times, Defendant was a public agency, state department, or state agency as defined under the FMLA and RIPFMLA.

### III.  Jurisdiction

4. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the FMLA and ADA.

5. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV.  Venue

6. Venue is proper in this Court insofar as Defendant is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island and a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.  Exhaustion of Administrative Remedies

7. On or about October 31, 2018, Plaintiff co-filed a charge with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC") against Defendant, alleging discrimination on the basis of her disability.

8. Thereafter, more than one hundred and twenty (120) days but not more than two (2) years having elapsed since the filing of Plaintiff's charge of discrimination, Plaintiff filed a Request for Notice of Right to Sue with the RICHR and the EEOC.

9. On September 30, 2020, the RICHR issued Plaintiff a Notice of Right to Sue.

10. On October 30, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

11. Accordingly, insofar as Plaintiff has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, Plaintiff has timely instituted suit in the within matter.

12. There is no requirement under the FMLA, RIPFMLA and/or the RICRA relative to the exhaustion of administrative remedies.

## VI. Material Facts

### *Factual Background*

13. Plaintiff was employed by Defendant as an Administrative Assistant for the East Providence School Department from on or about September 1999 until on or about December 17, 2017.

14. Plaintiff worked in an elementary school for a few years and then transferred to the high school for approximately fifteen years.

15. Plaintiff was a member of the National Education Association of Rhode Island and each of her positions were union positions.

16. Plaintiff was a loyal, experienced, and productive employee of Defendant without any prior history of warnings or purported work deficiencies.

17. During that time, Plaintiff received outstanding performance reviews each year and was presented with the Golden Apple Award from the faculty and staff one year.

### *Constructive Discharge*

18. In June 2017, Plaintiff bid for an open position as the secretary for the Director of the East Providence Career and Technical Center (CTC), which she was transferred to in July of 2017.

19. Plaintiff's new position was a full-time, year long assignment, including working during the summer and school vacations, with paid sick days.

20. When Plaintiff began working in her new position, she received no training from her supervisor, the Director of the Career Technical School, Karen Mellen ("Ms. Mellen").

21. Although Plaintiff had believed that the position was for an administrative assistant, the job required accounting skills for which Plaintiff also received no training.

22. Despite a difficult start, Plaintiff tackled the job to the best of her abilities under the circumstances and believed that she was catching on.

23. Plaintiff worked very hard for Ms. Mellen, rarely taking breaks or leaving her desk.

24. In fact, Ms. Mellen repeatedly commented that Plaintiff never left her desk and, on several occasions, suggested that Plaintiff take a walk or step away from her desk for a deserved break.

25. On one occasion, Plaintiff heard a staff member from the high school ask Ms. Mellen jokingly if they could have Plaintiff back, and Ms. Mellen responded, "Nope. We are keeping her, she's a fast learner."

26. However, without any warning whatsoever, on Friday, October 13, 2017, Plaintiff's union President, Susan Allienello ("Ms. Allienello") and Defendant's Human Resources Director, Cheryl Mammone ("Ms. Mammone"), appeared at her work to meet with Plaintiff and Ms. Mellen.

27. During that meeting, Plaintiff was presented with a Performance Improvement Plan ("PIP") that she was asked to review and sign on the spot.

28. The PIP ordered Plaintiff to take training courses for accounting related issues, such as using Quickbooks and Microsoft Excel, to develop proficiencies that were not advertised or required when she bid for the position.

29. Plaintiff became extremely overwhelmed, began shaking and feeling ill, and wanted to leave the meeting.

30. When Plaintiff told Ms. Mammone that she felt like she was going to pass out, she was told to sit down or she would be written up.

31. When Plaintiff did not feel comfortable signing the PIP, Ms. Mammone eventually agreed to let her review it over the weekend and scheduled a meeting for early Monday morning to sign the PIP.

32. On Monday, October 16, 2017, Plaintiff visited her primary care physician, Omar Meer, M.D. ("Dr. Meer"), who immediately advised that Plaintiff needed to take a leave from work due to extremely high blood pressure, stress, anxiety, headaches and difficulty concentrating.

33. Dr. Meer also told Plaintiff she was suffering from chest tightness, synocompal episodes, panic, and anxiety at work.

34. Plaintiff still currently has these symptoms and is being treated with medication and is being evaluated to rule out any cardiac or other medical causes.

35. Plaintiff submitted a doctor's note to Human Resources and was approved to take a FMLA medical leave from October 16, 2017 to December 4, 2017.[1]

36. Plaintiff also spoke with her Union Representative, Linda Leclair ("Ms. Leclair"), about her PIP and was advised that the PIP was based on impermissible justifications in violation of the Defendant's progressive discipline policy and would not be part of her permanent record.

37. On or about December 4, 2017, Dr. Meer provided another doctor's note to Defendant indicating that Plaintiff was unable to work from December 4, 2017 to January 5, 2018.

---

[1] The terms "FMLA leave or "FMLA medical leave," whenever used herein, jointly refer to medical leave under both the FMLA and the RIPFMLA.

38. Even with the extension requested by Dr. Meer, Plaintiff's medical leave would still have been within the permissible 12-week FMLA period.

39. Accordingly, Plaintiff's continued medical leave should have been approved without any further response from Defendant.

40. Moreover, under the applicable collective bargaining agreement, Plaintiff still had numerous sick days to which she was entitled, and for which the doctor's note she had presented was more than sufficient to qualify her.

41. Nevertheless, on December 6, 2017, Defendant sent an extraordinary letter to Plaintiff stating that because her physician did not specify *why* she needed the additional leave in the December 4, 2017 note, Defendant was requiring that Plaintiff be assessed by its own psychiatric physician as a condition for approval of her medical leave extension.

42. At all relevant times, Plaintiff suffered from several disabilities as defined under the ADA, CRPD, and RICRA, specifically, stress, and anxiety disorders, that substantially limited one or more major life activities, including her ability to concentrate.

43. At all relevant times, Plaintiff suffered from a serious health condition as defined under the FMLA requiring continuing treatment by a health care provider; specifically, Plaintiff suffered from stress and anxiety disorders.

44. At all relevant times, Plaintiff suffered from a serious illness as defined under the RIPFMLA requiring continuing treatment by a health care provider; specifically, stress and anxiety disorders.

45. The ability to concentrate and focus is an essential job function in Plaintiff's former position as an administrative assistant.

46. Both the EEOC and Courts have held that "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position is held . . . is

customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position," including providing additional unpaid leave, are reasonable accommodations under the ADA. *See, e.g.*, 29 C.F.R. § 1630.2(o)(1); *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166 (1st Cir. 1998); *Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir. 1996).

47. Pursuant to the ADA, FEPA, CRPD, and RICRA, an employer may not request additional medical documentation while considering a request for reasonable accommodation where, as here, the disability and/or need for accommodation are *obvious*. *See, e.g.* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (2002), Question 6.

48. Plaintiff's serious medical condition, disability, and need for reasonable accommodation was clearly obvious and known to the Defendant given the previous documentation already submitted by Plaintiff's medical provider relative to Plaintiff's medical leave.

49. Among other things, Plaintiff was concerned that if she was examined by a psychiatrist on Defendant's behalf, then her sensitive and private medical information would not only be revealed to Ms. Mammone, but would also become known to secretaries and other clerical personal and possibly co-workers in her union.

50. As a consequence, on December 15, 2017, Plaintiff was constructively discharged by Defendant when she resigned due to the Defendant discriminating against her on account of her disability and insisting that she be subjected to an examination by its own psychiatric physician as condition of approval of her request for a medical leave extension in violation of applicable law and contrary to the applicable collective bargaining agreement and/or customary practice and procedure of the Defendant.

*Subsequent Employment and Discriminatory and Retaliatory Discharge*

51. After being out of work for several months, Plaintiff enrolled in classes to become a Para-Professional/Teacher Assistant.

52. Upon completing the course, Plaintiff dropped off her certificate and necessary paperwork to Defendant's Human Resources Department.

53. Shortly thereafter, in August 2018, Plaintiff was hired as a substitute Teacher Assistant and assigned to a school for a two-month substitute teaching position in a special education class from August 28, 2018 to November 1, 2018.

54. On or about August 30, 2018, Deborah T. Ormerod, Department Chair--Special Services, recommended Plaintiff for a *permanent* position as a Teacher Assistant.

55. The next day, Plaintiff's classroom was called by a secretary to advise that she had to report to the office for a phone call.

56. When Plaintiff answered the call, Ms. Mammone advised Plaintiff that she had just learned that Plaintiff had been hired and Plaintiff that her services were no longer needed because Plaintiff had not completed the PIP when she resigned from her administrative assistant position the previous year.

57. In addition, without justification or explanation, Plaintiff was further informed by Ms. Mammone that her name would be removed from all future City of East Providence School Department hiring lists.

58. After Plaintiff filed a Charge of disability discrimination, Defendant claimed that Plaintiff's termination was also motivated by a need for a more "experienced substitute," a contention that is belied by Ms. Ormerod's recommendation that Plaintiff be appointed to a permanent position

59. Accordingly, Defendant's purported justifications for terminating Plaintiff's position as a teacher's assistant, a) her failure to complete a PIP given for an *entirely unrelated position* a *year earlier* and b) the purported need for a more "experienced substitute," were clearly false, pretextual, and evidence of discriminatory intent.

### VII.  Violation of the FMLA and RIPFMLA

60. Defendant's demand that Plaintiff see a medical provider of Defendant's choosing after she took a medical leave and had requested an extension and/or as soon as her FMLA/RIPFMLA medical leave ended gives rise to a *prima facie* case of unlawful interference with Plaintiff's protected rights under the FMLA and RIPFMLA.

61. Defendant violated the FMLA and RIPFMLA by requiring that Plaintiff be examined by a medical provider of Defendant's choosing and provide documents and/or information beyond that required or allowed under the FMLA and RIPFMLA as part of the certification process. *See, e.g.,* United States Department of Labor, "The Employer's Guide to The Family and Medical Leave Act" at 31 ("Whether a diagnosis is included in the certification form is left to the discretion of the health care provider and an employer may not reject a complete and sufficient certification because it lacks a diagnosis."); 29 CFR § 825.306.

62. By its refusal to accept Plaintiff's medical provider's note relative to an extension of her medical leave and demanding that Plaintiff be examined by a medical provider of Defendant's choosing in order to be granted an extension to her medical leave, in violation of applicable law and contrary to the applicable collective bargaining agreement and/or customary practice and procedure of the Defendant, Defendant constructively denied Plaintiff's request for FMLA leave and terminated her employment as a secretary in violation of the FMLA/RIPFMLA.

63. Furthermore, Defendant's termination of Plaintiff as a secretary and subsequently as a Teacher's Assistant after she took a FMLA/RIPFMLA medical leave gives rise to a *prima facie* case of unlawful discrimination against Plaintiff for exercising her rights under the FMLA and RIPFMLA.

64. Defendant's termination of Plaintiff as a secretary and subsequently as a Teacher's Assistant after she took a FMLA/RIPFMLA medical leave gives rise to a *prima facie* case of unlawful retaliation against Plaintiff for exercising her rights under the FMLA and RIPFMLA.

### VIII. Disability Discrimination in Violation of the ADA, CRPD, FEPA, and RICRA

#### *Protected Impairment*

65. At all relevant times, Plaintiff suffered from several disabilities, as that term is defined and applied under the ADA, FEPA, CRPD, and/or RICRA; specifically Plaintiff suffered from depression, stress, and anxiety disorder, of which Defendant was aware.

66. At all relevant times, Plaintiff's stress and anxiety disorder substantially limited one or more major life activities, including but not limited to her ability to work and concentrate.

67. At all relevant times, Defendant had a record of Plaintiff's impairments, as that term is defined and applied under the ADA, FEPA, CRPD, and/or RICRA, including Plaintiff's depression, stress, and anxiety disorder.

68. At all relevant times, in the alternative, Defendant regarded and/or perceived Plaintiff as having an impairment, as that phrase is defined and applied under the ADA, FEPA, CRPD, and/or RICRA, including Plaintiff's depression, stress, and anxiety disorder.

69. Accordingly, even if Plaintiff was not suffering from a "disability," at all relevant times, Defendant regarded and/or perceived Plaintiff as being disabled and/or had a record of her impairment.

### *Qualified Individual*

70. At all relevant times, including both before and after her medical leave, Plaintiff was able to perform her regular duties as a secretary, which clearly establishes her ability to perform the "essential" tasks required of her job "with or without reasonable accommodation."

71. Accordingly, at all relevant times, Plaintiff was a qualified individual or otherwise qualified, as those terms are defined under the ADA, FEPA, CRPD, and/or RICRA.

### *Adverse Employment Action*

72. Plaintiff began experiencing adverse employment action at the hands of Defendant almost immediately after she informed Defendant of her disabilities and her need for reasonable accommodation in the form of a medical leave and extended medical leave

73. Defendant clearly treated Plaintiff differently from other employees not suffering or perceived as suffering from a disability, and thereby brought about her constructive discharge as a secretary by a) refusal to accept Plaintiff's medical provider's note relative to an extension of her medical leave and b) demanding that Plaintiff be examined by a medical provider of Defendant's choosing in order to be granted an extension to her medical leave, in violation of applicable law and contrary to the applicable collective bargaining agreement and/or customary practice and procedure of the Defendant.

74. In addition, Defendant subsequently hired and then terminated Plaintiff as a Teacher's Assistant almost immediately following her return to work.

### *Failure to Provide Reasonable Accommodation/Engage in an Interactive Dialogue*

75. At all relevant times, Defendant was aware that Plaintiff had a need for a reasonable accommodation due to her disabilities in the form of a medical leave and/or extended medical leave.

76. At all relevant times, Defendant refused to provide Plaintiff with the medically documented reasonable accommodation she requested, specifically, her request for an extension of her medical leave.

77. Defendant's failure or refusal to engage in a dialogue relative to the necessity and nature of any reasonable accommodation Plaintiff required, in and of itself, qualifies as prohibited disability discrimination.

78. Further, Defendant violated the ADA, FEPA, CRPD, and/or RICRA by seeking additional information regarding Plaintiff's request for reasonable accommodation and by requesting medical information or documentation with respect to Plaintiff's request for reasonable accommodation beyond that allowed or required under the ADA, FEPA, CRPD, and/or RICRA.

*Disability Discrimination and Retaliation*

79. Pursuant to the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA.]" 42 U.S.C. § 12203(a).

80. Pursuant to the ADA, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

81. Pursuant to the FEPA, it is unlawful "[f]or any employer…to discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter …" R.I. Gen. Laws § 28-5-7(5).

82. Pursuant to the FEPA, it is unlawful "[f]or any person, whether or not an employer, … to aid, abet, incite, compel, or coerce the doing of any act declared by [the FEPA] to be an unlawful employment practice, or to obstruct or prevent any person from complying

with the provisions of [the FEPA]…, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice; …" R.I. Gen. Laws § 28-5-7(6).

83. Defendant retaliated or discriminated against Plaintiff for requesting a reasonable accommodation.

84. Defendant interfered with Plaintiff's rights under the ADA and FEPA.

85. Defendant unlawfully intimidated or threatened Plaintiff in violation of the ADA and FEPA.

86. Defendant retaliated, discriminated, interfered, intimidated, and/or threatened Plaintiff as stated above by taking the adverse actions described above including: a) demanding that Plaintiff be examined by a medical professional of Defendant's choosing; b) requiring additional medical documentation and information beyond that required or allowed under the FMLA and/or ADA; c) denying Plaintiff's request for extended medical leave as provided pursuant to its own policies; and, d) constructively terminating Plaintiff's employment as a secretary; and, e) terminating Plaintiff's employment as a Teacher's Assistant.

87. For the same reasons set forth in paragraph 86, Defendant, by and through its agents, aided, abetted, incited, compelled, or coerced acts in violation of the ADA and/or FEPA.

88. For the same reasons set forth in paragraph 86, Defendant, by and through its agents, obstructed or prevented compliance with the provisions of the FEPA as set forth herein.

### IX. General Employment Law Allegations

*Pretext and Discriminatory Animus*

89. Defendant's intent to discriminate against Plaintiff on account of her disabilities, perceived impairments, or recorded impairments is further established, in part, by conduct evidencing that Defendant's reasons for terminating her were pretextual and that discrimination motivated its decision, including: a) failure to follow its own policies and procedures, b)

inexplicable deviation from its normal practices and procedures, c) asserting after the fact justifications for her termination, d) asserting false justifications for her termination, e) treating Plaintiff differently than other similarly situated employees; and, f) asserting implausible, inconsistent, and contradictory justifications for her termination.

90. The temporal proximity of adverse employment action against Plaintiff in relation to her requests for and commencement of her FMLA/RIPFMLA leave and reasonable accommodation supports an inference of discriminatory intent.

*Motivation and Harm*

91. Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to those described herein, are in violation of the FMLA, RIPFMLA, ADA, FEPA, CRPD, and/or RICRA and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

92. As a proximate result of Defendant's wrongful and/or unlawful discriminatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury, including, but not limited to, pecuniary losses, loss of income, loss of benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to her professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## X. Causes of Action

93. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 92 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

**Count One**
**Family and Medical Leave Act**
**29 U.S.C. § 2601,** *et seq*.
*Interference, Retaliation, and Discrimination*

94.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the FMLA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the FMLA.

**Count Two**
**Rhode Island Parental and Family Medical Leave Act**
**R.I. Gen. Laws § 28-48-1,** *et seq*.
*Interference, Retaliation, and Discrimination*

95.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the RIPFMLA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RIPFMLA.

**Count Three**
**Americans with Disabilities Act**
**42 U.S.C. § 12101,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

96.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the ADA, and thereby deprived him of rights secured under the ADA, causing him to suffer damages as aforesaid.

**Count Four**
**Rhode Island Fair Employment Practices Act**
**R.I. Gen. Laws § 28-5-1,** *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

97.     Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the FEPA, and thereby deprived him of rights secured under the FEPA, causing him to suffer damages as aforesaid.

### Count Five
### Civil Rights of People with Disabilities
### R.I. Gen. Laws § 42-87-1, *et seq.*
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

98. Defendant, by its acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of his disability and violated Plaintiff's statutory rights in violation of the CRPD, and thereby deprived him of rights secured under the CRPD, causing him to suffer damages as aforesaid.

### Count Six
### Rhode Island Civil Rights Act of 1990
### R.I. Gen. Laws § 42-112-1, *et seq*.
*Discrimination, Failure to Accommodate, and Retaliation/Interference*

99. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of Plaintiff's disability, and thereby wrongfully interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

### XI.    Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the FMLA, RIPFMLA, ADA, FEPA, CRPD, and/or RICRA..

2. An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, other compensation and/or benefits, and to make her whole for all earnings and benefits she would have received but for Defendant's unlawful conduct.

4. An award of compensatory damages.

5. An award of punitive damages.

6. An award of liquidated damages.

7. An award of prejudgment interest, reasonable attorneys' fees, and costs.

8. Such other and further relief as this Court deems just and proper.

## XII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## XIII. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

>Plaintiff,
>By her attorneys,
>**SINAPI LAW ASSOCIATES, LTD.**

Dated:  November 20, 2020

>/s/ Richard A. Sinapi, Esq.
>/s/ Chloe A. Davis, Esq.
>**Richard A. Sinapi, Esq. (#2977)**
>**Chloe A. Davis (#9334)**
>2374 Post Road, Suite 201
>Warwick, RI 02886
>Phone:  (401)739-9690
>FAX:  (401) 739-9040
>Email:  ras@sinapilaw.com
>Email:  dab@sinapilaw.com