UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| COLLEEN A. DERRICK,<br>    Plaintiff,<br><br>v.<br><br>CITY OF EAST PROVIDENCE, by and through its Finance Director, MALCOLM MOORE,<br>    Defendant. | C.A. No. 1:20-cv-00491-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Plaintiff Colleen Derrick ("Derrick") filed suit against the City of East Providence, by and through its Finance Director, Malcolm Moore ("City"), for discrimination, interference, and retaliation in violation of the Family and Medical Leave Act, 19 U.S.C. § 2601, *et seq.* ("FMLA"); the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-48-1, *et seq.* ("RIPFMLA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq.* ("FEPA"); the Civil Rights of People with Disabilities Act, R.I. Gen. Laws § 42-87-1, *et seq.* ("CRPD"); and the Rhode Island Civil Rights Act of 1990 R.I. Gen. Laws § 42-112-1, *et seq.* ("RICRA"). Before the Court is Plaintiff's Motion for Summary Judgment as to liability on all counts. (ECF No. 23.) The City did not file an opposition. For the

reasons below, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

Ms. Derrick began working for the City's school department in 1999 as an Administrative Assistant. (ECF No. 25 ¶ 7.) In June 2017, Ms. Derrick bid for and received a position as Secretary to the Director of the East Providence Career Technical Center, Karen Mellen. (*Id.* ¶ 12.) In this new role, Ms. Derrick was required to use accounting software and perform advanced functions in Microsoft Excel, she had not previously performed either task. (*Id.* ¶¶ 16-17.) On October 2, 2017, Ms. Mellen contacted the school department's Director of Human Resources, Cheryl Mammone, to express concerns regarding Ms. Derrick's performance and to ask about potential training opportunities. (ECF No. 24-5 at 2-3.) A decision was later made to place Ms. Derrick on a Personal Improvement Plan ("PIP"). (*Id.* ¶ 29; ECF No. 24-5 at 2.)

On Friday, October 13, 2017, Ms. Mellen and Ms. Mammone met with Ms. Derrick to present the PIP. (ECF No. 25 ¶¶ 31-41.) During the meeting, Ms. Derrick expressed that she was "very stressed out" and asked to leave. (*Id.* ¶ 43.) Ms. Mammone gave Ms. Derrick a copy of the PIP to review at home and advised that they would meet again on Monday. (*Id.* ¶ 44.)

Over the weekend, Ms. Derrick began suffering from chest pain, headaches, pre-syncope episodes[1], persistent anxiety, fatigue, and panic episodes. (*Id.* ¶ 45.) On Monday, October 16, 2017, Ms. Derrick missed work to attend an appointment with her primary care physician, Dr. Omar Meer. (*Id.* ¶¶ 46-47.) Dr. Meer recommended that she take time off work to avoid any exacerbation of her symptoms and provided a doctor's note excusing her from work from October 16, 2017 through October 30, 2017. (*Id.* ¶¶ 51-52.) Ms. Derrick visited Dr. Meer for a follow-up appointment on October 30, 2017, at which time he recommended that she remain out of work for an additional six to eight weeks and completed FMLA Certification paperwork requesting that Ms. Derrick be placed on medical leave until December 4, 2017. (*Id.* ¶ 53.) The City approved Ms. Derrick's FMLA leave request from October 16, 2017 to December 4, 2017. (*Id.* ¶ 55.)

On December 4, 2017, Ms. Derrick visited Dr. Meer for another follow-up appointment and reported that she was occasionally suffering episodic panic attacks that would cause her blood pressure to rise precipitously. (ECF No. 24-3 at 3.) Accordingly, Dr. Meer provided Ms. Derrick with a doctor's note that sought to extend her leave to January 5, 2018. Dr. Meer's note included no explanation of why an extension was required. (*Id.* at 11.)

---

[1] "Pre-syncope is the feeling that you are about to faint. Someone with pre-syncope may be lightheaded (dizzy) or nauseated, have a visual 'gray out' or trouble hearing, have palpitations, or feel weak or suddenly sweaty." Syncope (Fainting), John Hopkins Medicine (last visited August 17, 2023), https://www.hopkinsmedicine.org/health/conditions-and-diseases/syncope-fainting.

The City received Dr. Meer's note on or before December 6, 2017. (ECF No. 25 ¶ 70.) At that time, both Ms. Mammone and the Superintendent of Schools, Kathryn Crowley, suspected that Ms. Derrick may be faking her symptoms to avoid dealing with the PIP. Consequently, Ms. Mammone elected to seek a second opinion medical examination prior to approving an extension of the FMLA leave. (*Id.* ¶¶ 71, 76.) On December 6, 2017, Ms. Mammone sent Ms. Derrick a letter notifying her that the City would like to have her medical condition assessed by its own physician. The letter provided a list of psychiatrists and stated that Ms. Derrick must advise which psychiatrist she would like to see no later than December 13, 2017. (ECF No. 24-12.) Rather than comply with the request for a second opinion medical examination, Ms. Derrick elected to retire on December 15, 2017. (ECF No. 24-14.)

Following her retirement, Ms. Derrick completed training to become a teacher assistant ("T.A."). (ECF No. 25 ¶89.) In August 2018, the City hired her as a substitute T.A. assigned to a placement in a special education class from August 28, 2018 to November 1, 2018. (*Id.* ¶ 95.) On August 31, 2018, Ms. Mammone learned that Ms. Derrick was performing work for the City. That same day, Ms. Mammone terminated Ms. Derrick's T.A. assignment and informed her that her name would be removed from the City's list of T.A.s eligible to receive future assignments. Further, Ms. Mammone advised Ms. Derrick that these actions were taken because she had not completed the PIP when she resigned from her administrative assistant position the previous year. (*Id.* ¶¶ 99-103.)

Thereafter, Ms. Derrick filed this action alleging that the City's request for a second opinion medical examination and termination of Ms. Derrick from the T.A. position violated federal and state laws.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000). When determining whether to grant summary judgment, the record is reviewed in the light most favorable to the non-moving party, and all factual inferences must be drawn in their favor. *See Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir. 1989). This review should be "most searching in cases, such as this, that turn upon the issue of motive or intent ... [as] these difficult questions are most suited for jury determinations, as proof is generally based on inferences that must be drawn." *Id.*

When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion. *NEPSK, Inc. v. Houlton,* 283 F.3d 1, 7–8 (1st Cir.2002). The non-movant's failure to contest or deny the movant's statement of undisputed facts must result in those facts being deemed admitted. D.R.I. LR 56(a)(3) ("For purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion."); *see also Schiffman v. United States*, 811 F.3d 519, 525 (1st Cir. 2016) ("[F]ailure [to contest or deny undisputed facts] has consequences .... The [nonmovant's] failure meant that all of the facts set forth in the [movant's] statement of undisputed facts were deemed admitted."). "Before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Aguiar–Carrasquillo v. Agosto–Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (quoting *López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991)).

## III. DISCUSSION

### A. Family and Medical Leave Claims (Counts One and Two) [2]

Congress enacted the FMLA "to help working women and men balance the competing demands of work and personal life." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 718 (1st Cir. 2014). The FMLA establishes substantive rights, including an employee's entitlement to twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To protect an employee's substantive rights, "the FMLA and its accompanying regulations make it unlawful for any employer to, among other things: (1) 'interfere with, restrain, or deny the exercise' of any FMLA right, 29 U.S.C. § 2615(a)(1); or (2) retaliate or 'discriminat[e] against employees ... who have used FMLA leave,' such as by 'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions,' 29 C.F.R. § 825.220(c); *see also* 29 U.S.C. § 2615(a)(2)." *Carrero-Ojeda*, 755 F.3d at 718. The distinction between an FMLA interference claim and a retaliation claim turns on "whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or

---

[2] Ms. Derrick's FMLA and RIPFMLA claims are analyzed in exactly the same manner, thus, the Court's review of the federal claim applies with equal force to the parallel state-law claim. *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 n. 1 (1st Cir. 1998).

her for having exercised or attempted to exercise those rights." *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir.2005).

Here, Ms. Derrick has alleged both interference and retaliation claims. First, Ms. Derrick claims that the City interfered with her substantive rights under the FMLA by requiring her to obtain a second opinion medical examination prior to approving an extension of her medical leave. Second, Ms. Derrick claims that the City retaliated against her for exercising her FMLA rights by (1) requesting a second opinion medical examination and (2) terminating her from the T.A. position. The Court will address each of these claims in turn.

### 1.   FMLA Interference

To succeed on her FMLA interference claim, Ms. Derrick "must establish that: (1) that she is an 'eligible employee' under FMLA; (2) that she worked for an employer under FMLA; (3) that she was entitled to leave under FMLA; (4) that she gave adequate notice to her employer of her intention to take leave; and (5) that her employer denied her benefits to which she was entitled by FMLA." *Washington v. Honeywell Int'l, Inc.*, 323 F. Supp. 3d 309, 315–16 (D.R.I. 2018) (citation omitted). It is undisputed that Ms. Derrick has established the first four elements of her claim, as she was on FMLA leave from October 16, 2017 to December 4, 2017 and requested an extension of that leave on or around December 4, 2017. (ECF No. 25 ¶¶ 55, 68 & 70.) Thus, the Court's analysis turns on whether the City denied Ms. Derrick FMLA benefits to which she was entitled when it sought to obtain a second opinion medical examination before granting an extension of her FMLA leave.

Notably, the FMLA provides that an employer who "has reason to doubt the validity" of a medical certification may require the employee to obtain a second opinion. 29 U.S.C.A. § 2613(c)(1); 29 C.F.R. § 825.307. If an employee fails to participate in the second opinion process, the employer may deny the request for FMLA leave. *See* 29 C.F.R. § 825.305. Thus, to succeed on her claim that the City's request for a second opinion medical examination interfered with her substantive FMLA rights, Ms. Derrick must demonstrate that the request violated 29 U.S.C.A. § 2613(c)(1) and 29 C.F.R. § 825.307.

Here, Ms. Derrick alleges that the City's request for a second opinion medical examination was improper because the City's request was based upon "insufficient information" rather than doubts about the validity of the medical certification itself. (ECF No. 25 ¶ 68.) However, according to Ms. Mammone's deposition testimony, the City had concerns about whether Ms. Derrick was using FMLA leave to avoid the PIP that had been introduced just before to her initial FMLA request. (ECF No. 24-6 115:19-116:11.) In Ms. Derrick's own words, "[a]t the time the [request for an extension] was received by the City, both Ms. Mammone and the Superintendent of Schools, Kathryn Crowley, suspected that Ms. Derrick may be faking her symptoms to avoid dealing with the PIP[.]" (ECF No. 25 ¶ 71.) A reasonable inference that can be drawn from these statements is that Ms. Mammone had "reason to doubt the validity" of the request for an extension, and the FMLA permits an employer with such doubts to request a second opinion medical examination. Viewing the facts in the light most favorable to the City, as the Court must in reviewing this motion, the

Court finds that Ms. Derrick has not met her burden of proving undisputed facts entitling her to judgment as a matter of law on her FMLA interference claim. Thus, the Court DENIES Ms. Derrick's Motion for Summary Judgment on this claim.

### 2. FMLA Retaliation

In assessing allegations of FMLA retaliation, "the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998). "[W]hen there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to claims that an employee was discriminated against for availing [herself] of FMLA-protected rights." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Lopez-Lopez v. Robinson Sch.*, 958 F.3d 96, 104 (1st Cir. 2020). Once the employee has established a prima facie case, "[t]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003)). "If the employer does so, the plaintiff can rebut the employer's reason by offering evidence that the action was pretextual." *Id.*

To establish a prima facie case of retaliation, Ms. Derrick must show that: (1) she had availed herself to a protected right under the FMLA; (2) she was adversely

affected by an employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 114 (1st Cir. 2006). "An adverse employment action 'typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012) (quoting *Morales–Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010)).

Ms. Derrick asserts two claims of FMLA retaliation. First, she claims that the City's request that she complete a second opinion medical examination was in retaliation for her exercise of FMLA leave. Second, she claims that the City's decision to terminate her from the substitute T.A. position was in retaliation for her exercise of FMLA leave.

### a.  Second Opinion Medical Examination

Ms. Derrick has failed to establish a prima facie case of retaliation arising from the City's request for a second opinion medical examination. While Ms. Derrick has established that she availed herself of a protected right under the FMLA, she has not established that she was adversely affected by an employment action. As detailed above, the FMLA permits an employer to request a second opinion medical examination and there remains a factual dispute whether the second opinion examination requested here was permissible. Accordingly, the Court rejects Ms.

Derrick's argument that the City's request for a second opinion medical examination itself was an adverse employment action.

Moreover, Ms. Derrick has not introduced sufficient evidence to establish that she was constructively discharged. To prove constructive discharge, Ms. Derrick must show that working conditions were "so intolerable that [her] decision to resign was 'void of choice or free will'—that her only option was to quit." *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 134 (1st Cir. 2014) (quoting *Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008)). "This standard is entirely objective—we do not put weight on the employee's subjective beliefs, 'no matter how sincerely held.'" *Id.* (quoting *Torrech-Hernandez*, 519 F.3d at 52). Ms. Derrick elected to retire from her position rather than submit to a second opinion medical examination because "she was all but certain that her medical information would be leaked and known to, at least, all the other administrative assistants if she complied." (ECF No. 25 ¶ 85.) However, the Court finds that a reasonable person in Ms. Derrick's position would not have concluded that retiring from her job was her only available choice. Therefore, the Court DENIES Ms. Derrick's Motion for Summary Judgment on this claim.

### b.  Termination from Substitute Teacher Assistant Role

Ms. Derrick has established a prima facie case of FMLA retaliation arising from the City's decision to terminate her from the substitute T.A. role. On August 28, 2018, Ms. Derrick began a substitute T.A. assignment that was scheduled to continue through November 1, 2018. (ECF No. 25 ¶ 95.) Three days later, on August

12

31, 2018, the City terminated Ms. Derrick's employment as a substitute T.A. and informed her that she would be ineligible for future substitute work with the City. (ECF No. 25 ¶ 101-102). The record contains ample evidence of a causal connection between Ms. Derrick's exercise of her FMLA rights and the City's decision to terminate her from the substitute T.A. role. Specifically, Ms. Mammone informed Ms. Derrick that she was being terminated "because she had not completed the PIP when she resigned from her administrative assistant position the previous year." (ECF No. 25 ¶ 101.)

With the prima facie case established, the burden shifts to the City to offer a legitimate, nondiscriminatory reason for terminating Ms. Derrick. The City has not satisfied its burden. Instead, Ms. Mammone testified that the decision to terminate Ms. Derrick from the substitute T.A. role was unrelated to her performance in that role but was merely because she did not return to work to complete the PIP. (ECF No. 24-6 129:7-10.) Further, Ms. Mammone stated: "I felt like she should have tried to do the PIP plan. . . . I didn't feel that's the way of a team player, cooperative person wanting to do this." (ECF No. 24-6 126:12-23.) Rather than providing a legitimate reason for Ms. Derrick's termination, this testimony suggests that Ms. Mammone was retaliating against Ms. Derrick for her prior use of FMLA leave when she elected to terminate Ms. Derrick. *See Mancini v. Accredo Health Grp. Inc.*, 411 F. Supp. 3d 243, 256 (D. Conn. 2019) (remark that employee was not being a "team player" could "suggest animus concerning FMLA leave" where employer's remarks

13

were triggered by the exercise of FMLA). Thus, the Court GRANTS Ms. Derrick's Motion for Summary Judgment on this claim.

### B. Disability Discrimination Claims (Counts Three through Six)

Ms. Derrick alleges that the City discriminated against her based on her disability in violation of the ADA, FEPA, CRPD, and RICRA. The analytical framework derived from the ADA, which also employs the *McDonnell Douglas* burden-shiftwork framework, controls the Court's analysis of these disability claims. *See Kriegel v. State of Rhode Island, Dep't of Corr.*, 266 F. Supp. 2d 288, 296 (D.R.I 2003) (when disability claims are made under both federal and state law, the court's analysis is under the corresponding federal ADA statute); *Mancini v. City of Providence by & through Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (applying the *McDonnell Douglas* burden-shifting framework to an ADA discrimination claim). "A prima facie case of disability discrimination requires the plaintiff to show that (1) she was disabled within the meaning of the ADA, (2) she was a 'qualified individual,' and (3) the defendant took an adverse employment action against her on the basis of her disability." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 27 (1st Cir. 2019). Ms. Derrick's disability discrimination claims mirror her FMLA claims, as she alleges the City discriminated against her based on her disability in requiring her to complete a second opinion medical examination and in terminating her from the substitute T.A. role.

a.  Second Opinion Medical Examination

As discussed above, Ms. Derrick has not introduced sufficient evidence to establish that she was constructively discharged from the administrative assistant role. Thus, she is not entitled to judgment as a matter of law on her disability discrimination claim tied to the second opinion medical examination because she has not met her burden of establishing that she was subject to an adverse employment action. Therefore, the Court DENIES Ms. Derrick's Motion for Summary Judgment on this claim.

b.  Termination from Substitute Teacher Assistant Role

It is undisputed that Ms. Derrick was disabled within the meaning of the ADA, was able to perform the essential functions of the T.A. role, and suffered an adverse employment action in the form of termination. Thus, Ms. Derrick's disability discrimination claim turns upon whether Ms. Derrick has established that the City terminated her from the substitute T.A. role because of her disability. As discussed above, the City terminated Ms. Derrick from the substitute T.A. role "because she had not completed the PIP when she resigned from her administrative assistant position the previous year." At the time of her resignation, Ms. Derrick was out of work due to her disability. Accordingly, the Court finds that Ms. Derrick has satisfied her burden of establishing that the City's termination was because of her disability.

Thus, the burden shifts to the City to offer a legitimate, nondiscriminatory reason for terminating Ms. Derrick. However, the City has offered no alternative

explanation for Ms. Derrick's termination. Accordingly, the Court GRANTS Ms. Derrick's Motion for Summary Judgment on this claim.

## IV. CONCLUSION

For all these reasons, Plaintiff's Motion for Summary Judgment (ECF No. 23) is GRANTED as to Plaintiff's claims of retaliation and discrimination in violation of the FMLA, RIPFMLA, ADA, FEPA, CRPD, and RICRA arising from the City's decision to terminate her from the substitute teacher assistant role. Furthermore, Plaintiff's Motion for Summary Judgment is DENIED as to Plaintiff's FMLA and RIPFMLA interference claims and Plaintiff's claims of retaliation and discrimination in violation of the FMLA, RIPFMLA, ADA, FEPA, CRPD, and RICRA arising from the City's request for a second opinion medical examination and Plaintiff's subsequent retirement from the administrative assistant role.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

September 5, 2023